Good morning, Your Honor, and may it please the Court, my name is Rani Gupta, and I represent Michael Gaddy. This case started with an appointment about a hearing aid, and ended with Mr. Gaddy suffering excruciating pain as a result of the actions of the defendant, Dr. Adam. At the time of this hearing aid appointment, Mr. Gaddy had in place medical treatment issued by five different doctors for a shoulder injury, and these doctors had all put in place orders called Cronos that prevented Mr. Gaddy from being handcuffed behind his back, which caused him to suffer shoulder dislocation and pain, and this treatment was working. At the time of his hearing aid appointment, Mr. Gaddy hadn't suffered any recent shoulder dislocations, and he had no reason to expect the successful treatment would change. Yet at this appointment, Dr. Adam ended this treatment without examining Mr. Gaddy, discussing his condition with him, or reviewing any records that showed why this treatment was put into place. Did the doctor know, is it clear from the record that the doctor knew that she was ending the treatment? Yes, Your Honor. The Cronos says, ER 280 says discontinue waist chains, and Dr. Adam's declaration states that she saw that there was a Crono in effect. Why did she discontinue it? She discontinued it based on review of, her declaration is that she discontinued it based on review of medical records. Okay. And what was she supposed to do? Was she supposed to just leave it in place? Is there a presumption that it stays in place until something else changes, or is there a presumption that it goes away until it's affirmatively required? Well, there are a couple options she could have taken. She could have continued the Crono. She could have temporarily continued it, which is what another doctor did after Mr. Gaddy's shoulder dislocated. And that's what Dr. Adam herself did when she examined Mr. Gaddy in September. But does the Crono have to be renewed periodically, or does it expire of its own? It's a permanent Crono. He had a permanent Crono, and a permanent Crono, my understanding is that it does not need to be renewed. There is evidence that it is periodically reviewed. I thought the regulations provided that the Cronos had to be reviewed on a regular basis to see if they were to be continued. Yes. Okay. That's correct. And so was that the authority pursuant to which the doctor reviewed the Crono in this instance? Yes, she was required to, and we don't dispute that she was required to and entitled to examine and review the necessity for the Crono. But what she was not required to do and not permitted to do was to discontinue the Crono having no idea why it was issued in the first place. So counsel, are you saying that her actions rose to the level of deliberate indifference as opposed to negligence? Yes, Your Honor, because she did not take these very basic steps of determining why the Crono was issued, reviewing records that would indicate why it was issued, examining Mr. Gatti, discussing his condition with him and seeing what his symptoms are and why this Crono had been issued. It's not clear that any of the records she reviewed even discussed his shoulder at all. And so that failing to investigate such an extreme lack of diligence on her part is more than negligence or medical malpractice in the cases that this Court has held that it doesn't rise to the level of deliberate indifference. Don't the cases say that even gross negligence doesn't rise to the level of deliberate indifference? Correct. So if everything you just described, while it sounds bad, sounds like negligence and maybe gross negligence, but I'm not sure I saw anything in the record that suggested the knowledge, the conscious disregard of the risk. What is it that you rely on for that? Well, because the risk can be inferred from the fact that it was obvious or the subjective knowledge of the risk can be inferred from the fact that it was obvious. What was obvious? The risk was obvious because these five prior doctors had put into place his medical order. And there's evidence that these medical orders are only put into place when doctors determine they're necessary. And what was obvious here was that she had no basis for reversing those decisions. She had no knowledge of Mr. Gatti's shoulder condition. Right. Could she have been less obvious to her by the way that Mr. Gatti carried himself and by the way he walked in and by the way he moved his arms? Even if she was only examining him for a hearing aid, someone who had free mobility might suggest that they no longer needed the accommodation. Well, she hasn't relied on, in her declaration, she doesn't state that she relied on Mr. Gatti's gait or his appearance or any of these things. She has suggested that she relied only on these records from after his treatment was in place. But all those records demonstrate was that his treatment was working. And he had the chrono in place and he hadn't suffered any injury. Well, but there was no treatment. It was just a chrono. There is no the record doesn't reflect there was any treatment. A chrono is a form of treatment. It's a form of accommodation. And this Court has held in other cases such as Oktar v. Mesa, which is about a chrono requiring the plaintiff to be on a lower bunk. So these negative forms of refraining from taking a certain action can and is a form of treatment. Well, the doctor said that the doctor relied on the fact that there was nothing in the medical records for medical treatment for the shoulder, x-rays of the shoulder, or any treatment for shoulder dislocation. So why was she deliberately indifferent in relying on those portions of the record? Because those records were only from a time that the treatment was in place. And she did not have any records from before that time when the treatment was not in place. What treatment? What treatment was he getting for his shoulder? The chrono was the treatment at that point. But that's not treatment in the way that we usually use that phrase in a medical sense. I mean, he wasn't seeing a physical therapist. He wasn't getting pain medications or shots for arthritis. He wasn't getting steroids. He had in the past received those forms of treatment. And in Oktar, this Court has held that a lower bunk chrono is a form of treatment. So treatment can be refraining from doing certain things that can injure or cause substantial pain to the plaintiff are forms of treatment under this Court's precedent and under other Courts' precedent as well. But why was it deliberately indifferent for the doctor to say because there was no affirmative treatment, the chrono was no longer needed? Why would that be deliberately indifferent if she relied on those portions of the medical records? Because by not performing even a basic investigation, these things, reviewing medical records from demonstrating why a treatment is in place, performing an examination, are basic requirements of medical care. These are things that when we go to the doctor... That would show negligence, but how does that show deliberate indifference? Because these things are so required of basic medical care. In the cases where Courts have found things to only rise to the level of negligence, they have all performed these actions. Their actions have been based on review of the records, treatment of the patient. And Courts have consistently held that when a doctor performs a cursory evaluation or a cursory interview or no examination and prescribes treatment, particularly when they reverse the prior course of treatment on that basis, then that gives rise to a genuine issue of material fact about whether they did so, consciously disregarding the risk that reversing a prior course of treatment based on no foundation would cause substantial harm to the plaintiff. What case from this circuit most strongly supports your argument that the facts of this case rose to the level of deliberate indifference? Hamilton v. Endel is a case where the Court held... Which is your strongest case? I think that's the strongest published case from this circuit. Comstock, Steele, and Griesen are cases from other circuits. And Gaxiola v. Sayre is an unpublished case from this Court that is very similar. I'll reserve the remainder of my time. I do have a couple of questions for you, Counsel. And I'll ask the Chief to give you the time that you've reserved. So is the deliberate indifference at the point in what, on what, June 28th? Is that, is it, are you pinpointing it at that date and that date only? Correct, because that's when she took the action that created the risk of harm. In September, she says that she, when she examined him later on, she said it was obvious that he had been, you know, hitting the gym, that he was very muscular in his upper body, that he had seemed to have no restrictions of mobility. I mean, is there anything that we can, that we can infer from what she saw in September that would relate back to what, to June? It seems to me that those, those kinds of things, that is, being very muscular in your upper body, doesn't just come about between June and September. Well — Especially while he's complaining that he doesn't have the chrono. But at the same time, she, she continued his chrono at that point. She did. She actually was very attentive. I mean, I, the doctor was all over this once he complained. But that raises, on summary judgment, the Court has to be the light and the most favorable to Mr. Gatti, and that raises an issue of material fact about whether she thought that treatment was necessary, whether that examination, the post hoc examination, was as unambiguous as she claims. And another doctor, Dr. Martinelli, did the same thing when he examined Mr. Gatti and reinstated his chrono a few weeks earlier. He had performed the same examination of Mr. Gatti, yet he felt it was necessary to reinstate the chrono. Good morning. May it please the Court. My name is Trace Maiorino. I'm with the Attorney General's Office, and we represent the defendant, Dr. Adam. In this case, Dr. Adam urges the Court to do one of either two things. First of all, affirm the district court's ruling granting her motion for summary judgment because there was no evidence of deliberate indifference. She properly discontinued a waist-chain chrono because there was no evidence that he had a preexisting predisposition to shoulder dislocation. And second, even if the Court were to find that she were deliberately indifferent or violated Mr. Gatti's Eighth Amendment rights, she should be deemed qualifiably immune because any reasonable physician in her position at the time would not have known that she was violating Mr. Gatti's constitutional rights when she discontinued the waist-chain chrono. To establish the Eighth Amendment's violation, the plaintiff must first establish either under both an objective component and a subjective component. Under the objective component, there must be deliberate indifference to a serious medical condition. A patient shows this medical condition, a serious medical condition, by demonstrating a medical condition that significantly impairs his daily activities or that causes chronic pain or discomfort or would be one in which a doctor would comment on or treat. But the record doesn't demonstrate that evidence. Well, counsel, why was the chrono in place if there was no serious medical need? Your Honor, there is discretion for physicians to issue a chrono based on subjective complaints of the patient, as in this case. Even though the record demonstrates that as of 2008, there was an MRI that ruled out any shoulder pathology, there is still the discretion within the chrono regulations related to the chrono of the prison policy for a physician to issue a medical chrono. It doesn't necessarily mean that it's medically necessary. And then that's why the chrono continued before June 2013 when Dr. Adam had to renew the chrono because he had received a new hearing aid implant. Did you make the argument in the district court that there was no serious medical need? Your Honor, we did. And we do believe that based on her review of the medical records, that during the period of time of more than two years, there was no treatment for his shoulder, any shoulder condition, there was no X-ray of his shoulder condition. And it is undisputed, based on medical opinion from Dr. Sayre and Dr. Adam, that somebody with a predisposition to shoulder dislocation condition would have frequent and repeated requests for medical treatment, would have frequent, repeated complaints of pain. But that's not present here. I thought the district judge just assumed the objective prong and moved directly to analyzing this under the subjective prong and then ruled in the defendant's favor. That is correct, Your Honor, that the court did make that assumption based on the record before the court. But we still made the argument there and made the argument here that the objective component had not been met. So even taking the facts in the light most favorable to the plaintiff in this case, you think there is no material issue of fact regarding the serious medical need? Your Honor, that is our position. Based on the lack of evidence in the record, the medical records reviewed by Dr. Adam for more than two years, the fact that there was no frequent or repeated request for medical treatment. But what about his declaration? Do you ignore that? No, Your Honor, we don't ignore that. But why doesn't that raise a material issue of fact regarding serious medical need if he says that he has pain and that if he doesn't have the waist chain chrono that he will experience excruciating pain and shoulder dislocation? Why isn't that enough to raise a material issue of fact? To the extent that he's connecting his shoulder pain with a predisposition for shoulder dislocation. I believe we argued that he's not qualified to make that sort of a medical opinion. In addition, when he did... Nobody knows your body better than you. So a person is always qualified to declare what pain he or she is having and where it is. Yes, Your Honor. In this case, Mr. Gatti did complain of pain at the acromioclavical joint, the AC joint, a number of times after the August incident. But we do have medical opinion that states that pain at the AC joint does not indicate a predisposition to shoulder dislocation. Let's assume at least one member of the panel disagrees with you regarding that issue. Where do you go from there? As far as... We would move to the subjective point, Your Honor, that there is no evidence that Dr. Adam knew of and disregarded any serious medical condition in this case. We do note that for some of the reasons that we've already noted, that there was no frequent or repeated request for medical treatment or complaints of pain. So what did Dr. Adams know? She knew there was a chrono in place. Yes, Your Honor. So she may infer something from that. What other medical records does she have in front of her besides the chrono? She had more than two years of medical records that were devoid of frequent and repeated requests for medical treatment or medical pain. There was no diagnosis of shoulder pathology that he had a predisposition to shoulder dislocation. There was no X-ray indicating... She would have known that he had a predisposition for shoulder dislocation? If it were in the records that she reviewed... That's what I'm asking. What was in the records that she reviewed? Well, none of that information, that there was no X-ray related to a shoulder predisposition. I mean, would she have known what the reason for the chrono was? No, not in the records that she reviewed. There was no X-ray related to a shoulder... So she didn't know whether it was a wrist problem or a shoulder problem or an elbow problem? None of that information was in the medical records that she reviewed when she discontinued the waist-chain chrono. On what basis would she discontinue it if she hadn't even explored why the chrono was issued in the first place? Well, there was no medical evidence in the records that she reviewed. Because it's undisputed that a person with a predisposition to a shoulder dislocation condition would have those frequent requests for medical treatment and would have those medical records were devoid of that. There was no such request for medical treatment, no frequent... But what about the existence of the chrono in and of itself? Doesn't that indicate something that at some point in time a provider had determined that the chrono was necessary? Why shouldn't she have been required to explore that further? Well, in fact, she did when she reviewed those medical records for more than two years that she reviewed. In addition, during the June... What did those records tell her about why the chrono was issued initially? Well, I mean, I don't believe that it revealed the reason why it was issued. Wouldn't that be important to know before discontinuing it? Not necessarily, Your Honor. She did. She was in the same room with him. She is a trained physician. She did have an opportunity to review, to look at Mr. Gatti. He did make... He stated that there was no complaints of pain when she met with him in June. In addition, going back to the subjective component, after the June medical appointment, Mr. Gatti reached out and submitted a request for medical services and inquired about his waist-chain chrono. And in response, a nurse was sent to his cell front. She was there to provide examinations so it could be triaged, but he refused to participate. Instead, he wrote to Dr. Adam, and she immediately, I think the very next day, responded to him and advised him that, in fact, he did need to participate with the nurse when she was there to provide the examination. That interview with the nurse occurs before the incident with the... Yes. ...when he's hurt. It occurred... It was declined medical treatment before he re-injures the shoulder. Yes, in July of 2013. What would the chrono have revealed? I mean, other than the fact of the chrono, would it have revealed who the doctor was that had issued it? The chrono would have revealed the doctor that issued... The last chrono in the medical file would have revealed the doctor. Dr. Adams would have had to have gone to the doctor. Do we know whether that doctor was still on staff? That I do not know, Your Honor, whether or not the physician that issued the chrono was still on staff. But there is discretion within prison policy to continue a chrono without it necessarily being medically necessary, but for perhaps subjective complaints of the patient that's making... What about just asking Gaddy the question, why do you have a chrono? She could have done that. I don't believe that she did that during the examination. Doesn't that seem kind of like the logical thing for a physician to do? Like if you walked into a doctor's office with a sling on your arm, wouldn't you think the doctor would say, why do you have a sling on your arm? Is it broken? Is it a dislocated shoulder? Sure, absolutely. But in this case, he made no complaints of pain. He told her, I'm not in pain during that examination. And then when there's a waste chain chrono, which is somewhat unusual given the circumstances in the prison, and then she reviews the medical records that show during that more than two year period that there's no frequent request for medical treatment, no complaint of pain, no shoulder diagnosis, then that is a reasonable conclusion to make that the waste chain chrono is no longer necessary based on her medical training and experience concerning treatment from Mr. Getty. And I see that my time is up, Your Honors. I just have a final question for you. Posing counsel relies on Hamilton as the strongest case supporting the plaintiff's position. Tell us why we shouldn't be persuaded to follow the rationale of Hamilton in this case. Your Honor, I think that based on the record before the court, though, that Dr. Adams was not deliberately indifferent. I think that it's important to note that, as we've discussed with the subjective component, that she did respond to Mr. Getty's inquiries, that she did review medical records before the waste chain chronos, that she did observe that he was not in pain. She did not locate any medical evidence that supported the waste chain chrono. And she did respond to him in July of 2013, sending out for a medical evaluation, but that he wasn't going to participate before the alleged shoulder was dislocated. Based on that, we would ask the court to affirm the district court's granting of the motion for summary judgment. All right. Thank you, counsel. Thank you very much. Rebuttal? Let's put a minute on the clock. Thank you, Your Honor. I want to address Your Honor's question about Hamilton. And Hamilton is a very similar case, because the doctor in that situation, in that case, hadn't reviewed the medical file and hadn't performed an examination of the plaintiff. And that's what happened here. And similar cases from other courts have held, have drawn this distinction between when a doctor hasn't performed an examination and these very basic requirements of medical care and how that you can infer subjective knowledge from those prongs. But, counsel, in Hamilton, the plaintiff was recovering from surgery and there was medical order that he not fly. So don't you think that's a little different than happened in this case, where there was recent medical affirmative treatment that was disregarded? No, I don't think it's different, Your Honor, because the point in Hamilton was that the opinion by a doctor who hadn't examined the plaintiff and hadn't reviewed his medical file. And Mr. Gatti was at the time of this treatment and is today still being treated with a waist chain chrono, because even though he doesn't, he's not at the point where he requires significant affirmative treatment in the form of physical therapy and medicine, if he's handcuffed behind the back for two hours, he runs the risk that his shoulder dislocate. Even assuming that Dr. Adams was at least negligent in her June treatment when she discontinued the chrono, why does Mr. Gatti get to prevail here when he declined medical treatment before he was injured? He didn't decline medical treatment, Your Honor. You had the nurse come, right, to his cell and he refused to talk to her. The nurse came to his cell. There's a dispute about whether it was an appointment or a cell front visit. He said that the nurse just came to him and talked to him through his cell, told him he wanted to see Dr. Adam. He put in two, actually three, subsequent requests for medical treatment with Dr. Adam, requesting an appointment. Why wouldn't you? I mean, you know, I'm just basing it on common experience I've had with doctors and nurses. The nurse comes in and says, OK, what's what's what's going on today, Mr. Bybee? I don't say you're not a doctor. I'm not going to talk to you. Why would he why would he turn down the opportunity to tell a nurse what the problem was? Well, the record's not clear on why he did that, but he did accept that he did want to have his chrono reinstated and the nurse didn't have the ability to. Got it. But she but the nurse knows people who can do this. Why would you decline to tell the nurse what the problem was? I mean, this is a polite inquiry. It wasn't it wasn't extraordinarily sensitive matter. I had to say was my shoulder pops in and out. I've had problems with my shoulder and that's why I need to have the chrono reinstated. If you can't talk to Dr. Adams, I'll file more paperwork. Well, we don't know if if he had talked to the nurse, if his chrono would have been reinstated. Of course we don't. But if he doesn't talk to her, she can't do anything. But it's undisputed that while it's not disputed that she didn't have the ability to reinstate. But she has the ability to talk to Dr. Adams, right? He did have the ability to talk to Dr. Adams and she did talk to Dr. Adams. He was and Dr. Adams was aware she received these requests that he wanted the chrono reinstated. And at that point, she could have done what Dr. Martinelli did a few weeks later and reinstate the chrono. She could have said, well, I'll put the chrono in place until I can see you. She could have, as the panel suggested, called the doctors and find out why the chrono had been put into place in the first place. But she didn't do any of these measures. So she didn't do anything to abate the risk she had created when she discontinued the chrono in the first place. And for that reason, I ask you to reverse the decision. Counsel, I'm curious. You said that the plaintiff continued on the waist chain chrono, but I thought it excerpts a record 277. The chrono was discontinued. It's subsequently been reinstated. He has a chrono in place today, Your Honor. All right. Thank you. Thank you to both counsel for your arguments. The case is argued and submitted for decision by the court. And on behalf of the court counsel, we thank you for accepting this case pro bono. We appreciate the argument and the briefing that you did. Thank you very much.
judges: Rawlinson, Bybee, Smith